LEONEL A. AND MARIA A. SALINAS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Salinas v. Commissioner
Docket No. 13964-93
United States Tax Court
T.C. Memo 1995-124; 1995 Tax Ct. Memo LEXIS 131; 69 T.C.M. (CCH) 2213; March 27, 1995, Filed *131 Decision will be entered for respondent for the tax year 1988 and under Rule 155 for tax year 1989. Leonel A. Salinas, pro se. For respondent: David L. Click. PARR
PARR
MEMORANDUM FINDINGS OF FACT AND OPINION PARR, Judge: Respondent determined deficiencies and additions to petitioners' Federal income taxes as follows: Additions to Tax
Sec.
Sec.
Year
Deficiency
6653(a)(1) [1] 6662(a) 1988
$ 765
$ 38.25
-- 1989
9,620
-- $ 1,924
The issues in this case are: (1) Whether petitioners are entitled to deductions claimed on Schedule A of their income tax return for 1988; (2) whether $ 49,849 transferred to petitioner from his company in 1989 was a loan; (3) whether petitioners are entitled to deductions claimed on Schedule A of their return for 1989 in addition to those allowed by respondent; *132 and (4) whether petitioners are liable for an addition to tax for negligence for tax years 1988 and 1989. FINDINGS OF FACT The parties have entered into a stipulation of facts in this case, which is the basis for many of the findings of fact herein. When the petition in this case was filed, petitioners resided in Arlington, Virginia. 1988 - Substantiation
Petitioners have no documentation to support the following deductions claimed on Schedule A of their income tax return for 1988: Medical Expenses - $ 6,525 Personal Interest - $ 1,887 Charitable Contributions Paid in 1988 - $ 885 Charitable Contribution Carryovers - $ 585 Nontravel and Union Dues - $ 950 (Other Expenses) - $ 950 The only item petitioners claimed on their Schedule A which they could verify was $ 1,420 paid for State and local income taxes for calendar year 1988. Respondent, therefore, disallowed the itemized deductions claimed but allowed petitioners the standard deduction in the amount of $ 5,000. 1989- Substantiation
For tax year 1989, petitioners had no documentation to support the following claimed Schedule A deductions: Medical Expenses - $ 451 Personal Interest - $ 85 Charitable *133 Contributions - $ 690 Job Expenses - $ 133 Petitioners did substantiate their entitlement to the following deductions: State and Local Income Taxes - $ 515 Real Estate Taxes - $ 2,341 (exceeds the $ 2,108 claimed on petitioners' Schedule A) 1st Trust Home Mortgage Interest - $ 6,624 (exceeds the $ 5,256 claimed on Schedule A) 2nd Trust Home Mortgage Interest - $ 7,055.62 (exceeds the $ 5,850 claimed on Schedule A) Transfer of Funds from LIC
Petitioner Leonel Salinas was an owner and employee of Latin Investment Corp. (LIC) in 1989. In addition to $ 22,152 wages, petitioners also received $ 49,849 from LIC in February 1989. In the notice of deficiency, respondent treated $ 1,864 as a return of capital, and $ 47,985 as "taxable distributions". Petitioners contend the entire amount was a loan. On February 3, 1989, [2] petitioners purchased a home at 5713 Robinwood Lane, Falls Church, Virginia. The home cost $ 212,800. *134 Petitioners received a first deed of trust on the property for $ 100,000 payable to Edward R. and Theresa H. Baines, the sellers, in monthly installments of interest only at $ 584. The note provides that deferred interest of $ 332.67 monthly shall accrue until the note is paid in full or matures on March 1, 1992, when the entire balance shall be payable. A second deed of trust for $ 65,000 was payable to Gourley and Associates, Inc., at $ 650 per month, interest only at 12 percent, until March 1, 1994, when the entire principal and any accrued interest would be due. Petitioners still lacked the downpayment to complete the purchase of the property. On February 2, 1989, Mr. Salinas received a cashier's check in the amount of $ 49,849 drawn on LIC's account with Riggs National Bank payable to the closing agent, George Ragland, for the purchase of petitioners' home. The cashier's check was presented to Mr. Ragland on February 3, 1989, at the closing of the property. On February 27, 1989, petitioners signed an agreement [3] setting forth payment terms with respect to the $ 49,849 cashier's check, and provided a promissory note to LIC promising to pay the $ 49,849. By its terms the *135 agreement was retroactively effective as of February 1, 1989. The agreement provided that LIC would lend petitioners $ 49,849 in return for a promissory note and deed of trust held in a third trust. Petitioners were to repay $ 30,000 within 4 weeks and the remainder of the principal ($ 19,849) and interest within 2 years. Interest was to be assessed at a rate of 11 percent. At the end of the 2-year period, February 1, 1991, the entire amounts owing, including interest, will be due. Petitioner husband recorded the third trust at the Circuit Court of Fairfax County, Virginia, on March 28, 1989, on behalf of LIC. Petitioners paid attorney David Fernandez recording fees of $ 176.80 in connection with this transaction. *136 Mr. Salinas recorded the deed of trust when he realized he would not in fact be able to repay the $ 30,000 within 4 weeks. He had intended to borrow that money from another source, but was unable to do so, and felt he should collaterize the loan by recording the deed in order to protect LIC. During 1988 and 1989, petitioners' three sons (ages 18, 20, and 26) lived at home, worked, and contributed to the household expenses. Mrs. Salinas did occasional babysitting. Although they apparently made payments on the first and second trusts, petitioners never repaid the funds from LIC. Petitioner husband was one of four owners of LIC at the time of the transfer. Although the record is lacking in details, at some point (apparently in 1991) LIC declared bankruptcy. On May 29, 1991, petitioner husband received a letter from an attorney representing the bankruptcy trustee, Murray Drabkin. The letter made demand on petitioners "for repayment in full of all money due and owing to Latin Investment Corporation." The letter sets out the following details: The records of Latin Investment Corporation indicate that you borrowed $ 3,800 from Latin Investment Corporation on February 17, 1987, *137 and $ 15,000 on January 12, 1988. Principal and interest through May 31, 1991, on these borrowings is due and owing in the total amount of $ 25,605. [4]
In addition, the debt for $ 49,849 you and your wife borrowed, secured by a deed of trust on the property at 5713 Robinwood Lane, Falls Church, Virginia, matured on February 1, 1991, and has not been repaid. Principal and interest through May 31, 1991, is due and owing in the amount of $ 63,702.
Petitioners were unable to meet the demand, and consequently lost their home to foreclosure. OPINION Respondent's determinations are presumed correct, and petitioners must prove by a preponderance of the evidence that respondent's determination is erroneous. Rule 142(a); . 1988 - Substantiation
Since petitioners had no records to substantiate the deductions claimed on their 1988 return, and offered no testimony concerning *138 those deductions, petitioners have not met their burden of proving respondent erred. We sustain respondent's determination of the deficiency for 1988. 1989 - Substantiation
However, 1989 is a different matter. Although petitioners failed to substantiate a total of $ 1,359 for medical, interest, charitable contributions, and job expenses claimed, they did substantiate $ 3,077 in real estate taxes and home mortgage interest in excess of the amounts shown on the return. We find they are entitled to itemized deductions totaling $ 16,536. Transfer from LIC
We turn now to the $ 49,849 transferred to petitioners by LIC. We find the transfer was a true loan. Since petitioner husband was both an owner and employee of LIC, the loan is subject to close scrutiny. An essential inquiry as to whether there is a bona fide loan is whether the recipient of the funds has a good faith intent to make repayment and whether the payor of the funds has a good faith intent to enforce repayment. . Based on the record before us, we believe the evidence establishes that a true loan was intended, and that *139 petitioners were expected to and intended to repay the money with interest. First, all the paperwork is consistent with a loan made in connection with the purchase of a house. A cashier's check drawn on LIC's account was not made out to petitioner but to the closing agent. An agreement, promissory note, and deed of trust were prepared. The third trust was recorded in Fairfax County on March 28, 1989. There was no attempt at subterfuge or deceipt. Everything was public, and all parties knew the source of the funds. Respondent makes much of the facts that (1) the loan agreement was entered into on February 27 (effective by its terms February 1, 1989), whereas the funds were transferred February 2 to petitioner; and (2) the trust was not recorded until a month later. However, the decision to set forth in writing an otherwise bona fide transaction and the subsequent recording of documents is not fatal to petitioner's case. Petitioner's explanation for the delay in recordation is consistent with the facts and with the documents themselves. Petitioner had expected to be able to borrow from another source, and regarded the loan from LIC as a very short-term bridge loan. The agreement *140 anticipates repayment of $ 30,000 within 4 weeks and the rest in 2 years. If all had gone as planned, perhaps petitioner would not have felt the need to record a third mortgage for less than $ 20,000. When the other loan fell through, however, petitioner appropriately felt it incumbent to protect LIC and other owners by recording the lien himself. Moreover, it is abundantly clear that the trustee of the bankruptcy estate of LIC treated the transfer as a debt, made a demand for it, and foreclosed on it. Petitioner never interposed a defense in the bankruptcy proceedings that the transfer was anything other than a debt due to LIC. We therefore find that the $ 49,849 paid to the closing agent in connection with the purchase of petitioner's home was a nontaxable loan. Negligence
Section 6653(a)(1), in effect for the tax year 1988, provides that if any part of any underpayment of tax required to be shown on a return is due to negligence (or disregard of rules or regulations), there shall be added to the tax an amount equal to 5 percent of the underpayment. Section 6662, in effect for the tax year 1989, imposes a penalty of a 20-percent addition to tax on any part of an underpayment *141 due to negligence or intentional disregard of rules or regulations. Petitioner bears the burden of showing that he was not negligent. , affg. per curiam ; , aff. in part and remanding in part ; . Negligence, for purposes of an addition to tax, is defined as the "lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances". (fn. ref. omitted). Taxpayers are required to maintain records. Sec. 6001. Failing to keep or produce adequate books and records, as required by section 6001, may be justification for imposing the negligence addition to tax. . Petitioners did not offer any explanation other than the passage of time *142 for failure to keep records to substantiate the deductions claimed for 1988. Petitioners have not carried their burden of proving they were not negligent for 1988. Respondent is sustained. However, we do not impose the negligence penalty for 1989. We agree with petitioners' position as to the loan. Moreover, while petitioners were unable to substantiate $ 1,359 of Schedule A deductions claimed, they did substantiate entitlement to deductions totaling $ 16,536. They had claimed total Schedule A deductions of $ 15,088 on line 26 of Schedule A, but $ 16,617 on line 34 of Form 1040. No explanation is given for this inconsistency in petitioners' return. However, in light of the de minimis difference between the amount substantiated and the amount claimed ($ 81) we do not believe a negligence penalty is warranted. Decision will be entered for respondent for the tax year 1988 and under Rule 155 for tax year 1989. Footnotes
1. All section references are to the Internal Revenue Code in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.↩
2. Par. 37 of the stipulation says 1994, but we assume this is a typographical error.↩
3. The agreement (Ex. 14) was received in evidence without objection. It refers to a promissory note. An unsigned note was offered by petitioner but was not received in evidence, because the copy was not signed. However, all the material terms of the note are spelled out in the agreement which was received.↩
4. Respondent did not allege that the $ 15,000 was a taxable transfer.↩